UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES LEE MCGEE,

                Petitioner,

vs.                             Case No. 3:13-cv-1125-J-39MCR

SECRETARY, DOC, et al.,

                Respondents.

_____

## ORDER

### I.  STATUS

Petitioner James Lee McGee challenges a 2011 (Nassau County) conviction for sexual battery.  He is proceeding on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).  He submitted an Initial Brief and Exhibits (Doc. 4) in support of his Petition.  He raises four grounds in the Petition: (1) a Sixth Amendment claim asserting the denial of a fair trial; (2) a claim of mental health problems; (3) a claim of a biased judge; and finally, (4) a claim of excessive bail in violation of the Eighth Amendment.  These four grounds will be addressed by the Court.  Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992).  Upon review, the Court finds that no evidentiary proceedings are required in this Court.

Respondents filed a Response to Petition for Habeas Corpus (Response) (Doc. 14), requesting the Petition be denied.

Respondents submitted Exhibits (Doc. 14).[1]  Petitioner filed a Reply to State's Response (Doc. 19).  See Order (Doc. 8). Respondents do not contend that the Petition is untimely filed. Response at 4.

## II.   STANDARD OF REVIEW

The appropriate analysis when undertaking habeas review pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA) is set forth in a recent Eleventh Circuit opinion:

> review of the state habeas court's decision is constrained by § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "imposes a highly deferential standard for evaluating state court rulings and demands that state-court decisions be given the benefit of the doubt." Bishop v. Warden, GDCP, 726 F.3d 1243, 1253 (11th Cir. 2013), cert. denied, --- U.S. ----, 135 S.Ct. 67 (2014) (internal quotation omitted). Pursuant to the AEDPA, this Court is prohibited from granting relief if a state court has adjudicated a claim on the merits unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," id. § 2254(d)(2). This Court will analyze Petitioner's claims pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).

---

[1] The Court hereinafter refers to the exhibits contained in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix.  Otherwise, the page number on the particular document will be referenced.

<u>French v. Warden, Wilcox State Prison</u>, No. 12-15385, 2015 WL 3857639, at * 3 (11th Cir. June 23, 2015).   See <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011) (setting forth the same three exceptions to the bar to relitigation of any claim adjudicated on the merits in state court).

Also of import are the parameters for deferential review under AEDPA:

> A state-court decision represents an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal rule from Supreme Court cases but unreasonably applies the established law to the facts of the case. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003). The Supreme Court has repeatedly emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Cullen v. Pinholster</u>, ---U.S. ----, ----, 131 S.Ct. 1388, 1411, 179 L.Ed.2d 557 (2011) (quotation marks omitted).
>
> A state court's determination of the facts is unreasonable only if no fairminded jurist could agree with the determination. <u>Lee v. Comm'r, Ala. Dep't of Corr.</u>, 726 F.3d 1172, 1192 (11th Cir. 2013), <u>cert</u>. <u>denied</u>, --- U.S. ----, 134 S.Ct. 1542, 188 L.Ed.2d 557 (2014). Findings of fact by a state court are presumed to be correct, and a habeas petitioner must rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1284 (11th Cir. 2012). In determining how the state courts resolved a habeas petitioner's claims, we look to the last state court that rendered a judgment in the case. <u>Pope</u>, 680 F.3d at 1284-85.

Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 703 (11th Cir. 2015) (per curiam), petition for cert. docketed, (U.S. June 12, 2015) (No. 14-10198).

This Court will give a presumption of correctness of the state courts' factual findings unless rebutted with clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and, the Court will apply this presumption to the factual determinations of both trial and appellate courts. See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

### III.   EXHAUSTION AND PROCEDURAL DEFAULT

In addressing the question of exhaustion, the Court must ask whether Petitioner's claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to

address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." Kelley, 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 133 S.Ct. 875 (2013).

There are prerequisites to a federal habeas review. As such, the Court must also be mindful of the doctrine of procedural default:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747-748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct.

> 612, 617-618, 175 L.Ed.2d 417 (2009). The
> doctrine barring procedurally defaulted claims
> from being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. See Coleman, 501 U.S., at 750,
> 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012).

Of note, procedural defaults may be excused under certain circumstances; "[a] petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." Lucas, 682 F.3d at 1353 (citing Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

### IV.  PROCEDURAL HISTORY

To provide historical context to Petitioner's grounds for relief, the Court presents this brief summary of the case. On April 29, 2011 Petitioner was charged by information with sexual battery and lewd or lascivious battery. Ex. A at 1-2. Petitioner waived speedy trial. Id. at 3. On October 27, 2011, Petitioner signed a Plea of Guilty and Negotiated Sentence. Id. at 4-9. The

state agreed to nolle pros count two, and Petitioner agreed to plead guilty by convenience to the sexual battery count and receive a negotiated sentence of seven years, followed by three years of probation. Id. at 4.

On October 27, 2011, the trial court conducted a plea colloquy and accepted Petitioner's plea. Ex. D at 24-35. The court adjudicated Petitioner guilty and sentenced him to seven years in prison followed by three years of sex offender probation. Id. at 34. On October 27, 2011, the court entered judgment and sentence. Ex. A at 11-19. No direct appeal was taken. Response at 1.

On February 15, 2012, Petitioner filed a letter dated February 12, 2012 with the Supreme Court of Florida. Ex. B at 1-5; Ex. D at 1-3. On March 9, 2012, the court transferred the document to the circuit court to be considered as a motion for post conviction relief raised pursuant to Rule 3.850, Fla. R. Crim. Proc. Ex. B at 9; Ex. D at 4. The circuit court, on May 21, 2012, directed the Assistant State Attorney to investigate Petitioner's allegations and submit a response to the court. Ex. D at 10. The Assistant State Attorney responded, id. at 13-14, and the circuit court denied the post conviction motion. Id. at 15. Petitioner appealed. Id. at 39-40; Ex. E; Ex. F. On June 14, 2013, the First District Court of Appeal affirmed per curiam. Ex. G. The First District Court of Appeal denied rehearing, Ex. H, and the mandate issued on August 20, 2013. Ex. I. The Supreme Court of Florida

dismissed the petition for review for lack of jurisdiction. Ex. J-1.

Apparently Petitioner submitted a letter to the Florida Supreme Court on August 2, 2012 claiming his innocence and blaming the offense on his nephew, J.H.[2] Ex. PD at 14. The Supreme Court of Florida, on October 16, 2012, transferred the letter to the circuit court to be considered as a Rule 3.850 motion. Ex. J-2. Petitioner submitted another letter to the Supreme Court of Florida dated October 28, 2012 and filed October 31, 2012. Ex. K. It was also forwarded to the circuit court. Ex. PD at 14. The circuit court denied relief, finding that the court previously addressed Petitioner's allegations and denied post conviction relief. Ex. L. Petitioner moved to reinstate his case, Ex. M, and on January 17, 2013 the circuit court denied his motion. Id.

Petitioner filed a letter with the Supreme Court of Florida on January 8, 2013, Ex. N at 3-5, and on March 7, 2013, the court transferred the letter to the circuit court to be considered as a Rule 3.850 motion. Id. at 1. Petitioner filed a letter with the Supreme Court of Florida on January 30, 2013, and on April 23, 2013, the court transferred it to the circuit court to be considered as a Rule 3.850 motion. Ex. O. The trial court addressed the construed motions for post conviction relief and denied relief on July 10, 2013. Ex. Q at 13 (Order Denying Second

---

[2] The Court will refer to Petitioner's nephew by his initials, J.H., as he was a minor at the time of the incident.

[sic] Motion for Postconviction Relief). Petitioner appealed. _Id_. at 65.  On December 23, 2013, the First District Court of Appeal affirmed per curiam, and the mandate issued on January 21, 2014. Ex. R.

Of note, Petitioner filed a Motion to Correct Illegal Sentence pursuant to Rule 3.800(a), claiming he was entitled to some days of jail credit, and the circuit court granted the motion.  Ex. P.  The court entered an amended judgment and sentence on June 24, 2013, nunc pro tunc to October 27, 2011.  _Id_.

## V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In his first ground Petitioner raises a Sixth Amendment claim asserting the denial of a fair trial.  Petition at 5.  Again although not a model of clarity, Petitioner seems to be raising a Sixth Amendment claim of denial of his due process or compulsory process rights.  Apparently Petitioner is alleging that he was deprived of favorable testimonial evidence from the person who committed the crime because his lawyer and the prosecutor would not listen to Petitioner's nephew's confession to the crime.  In his supporting facts, Petitioner states that the court violated his rights by forcing him to accept a plea.  _Id_. at 5.  He also asserts that his witness was never allowed to speak to the defense lawyer or the prosecutor because they would not listen to the witness. _Id_.  Petitioner states that he has a notarized letter from his

- 9 -

nephew, J.H., but the prosecutor rejected the nephew's written confession to the crime. Id.

First, the Court notes that J.H.'s letter is notarized but not sworn under the penalty of perjury. Ex. D at 9. Nevertheless, the trial court ordered the Assistant State Attorney, John Kalinowski, to address Petitioner's allegations. Id. at 10. Mr. Kalinowski responded by stating that an investigator for his office interviewed J.H. by phone and in person. Id. at 13. Mr. Kalinowski concluded that he found the letter neither credible nor of a nature to establish actual innocence of Petitioner. Id. He referenced the following factors to support his conclusions:

> --The Defendant pled guilty on October 27, 2011. The letter by J.H. was not written until May 14, 2012. The letter appears to have been sent directly to the Defendant in prison.

> --J.H., has a date of birth of 7/21/1996 which makes him a juvenile at the time of the offense. In his letter he claims to have had consensual sex with the Victim in Mr. McGee's case. The juvenile is, therefore, not making any meaningful statement against interest in this case.

> --J.H. is the Defendant's nephew. Jason's mother is Patricia McGee, the Defendant's sister.

> --J.H. was interviewed by detectives with the Nassau County Sheriff's Office on March 23, 2011. In that interview he denied going to the party where the Defendant and Victim initially engaged in sexual activity. He claimed to have absolutely no knowledge of the incident. He now claims that he lied to the police because he was scared.

--J.H. originally stated to the SAO investigator that he had written the letter which was notarized. In a follow-up interview, J.H. stated the body of the statement was written by his mother, who had re-done the letter to correct misspellings. He did still claim the body of the letter was true.

--In the depositions of other witnesses around the Defendant and the Victim that evening, there is no indication J.H. was around the Victim and Defendant, or even at the get-together.

-The Victim claimed (in the CPT interview, deposition, and meetings with the SAO) to have specific recollections of sexual activity with the Defendant, as well as locations including a car and outdoor locations during the evening and into the morning. Other witnesses place the Defendant and Victim together in locations where the Victim alleges sexual activity occurred. J.H. claims any sexual activity occurred in a bedroom between 12:15-1:15 AM. The location and timeframe of the sexual activity does not comport with the Victim's allegation.

--The Victim recollected that the Defendant did not use a condom, and in fact ejaculated onto her body. J.H. states he used a condom when he engaged in sexual activity with the Victim.

Even if there is some truth to J.H.'s story (and this ASA highly doubts that), it does not exculpate James McGee. Therefore, the State intends to take no further action in this matter. Please let me know if there is anything else you would like me to investigate.

Ex. D at 13-14.

Petitioner claims that the prosecutor and his lawyer would not listen to J.H. As noted by the prosecutor, J.H. was interviewed

during the investigation of the crime and denied being present at the party or having any knowledge of the incident.  After Petitioner entered his plea and was sent to prison, someone sent the letter signed by J.H. to Petitioner.  In response to a directive by the trial court, the prosecutor did review J.H.'s letter and directed his investigator to speak with J.H., and the prosecutor determined, for a number of reasons, that the content of the letter did not exculpate Petitioner.  Finally, as noted by the prosecutor, even if J.H. did have consensual sex with the victim that evening, his actions would not exonerate Petitioner.

The record shows that the victim, during the plea proceeding, stated that Petitioner raped her.  Ex. D at 27, 30.  As for Petitioner's statement that the court forced him to accept a plea, the written plea form and the record of the plea proceeding belie this assertion.  In fact, on October 27, 2011, at the inception of the plea proceeding, Petitioner began to shake his head as the victim was speaking about Petitioner raping her.  Id. at 27.  The court immediately stopped the proceeding and announced a rejection of the plea.  Id.  The court said the matter would be set for trial.  Id.  Petitioner promptly said, "I'm not denying it."  Id. at 28.  The court again said, if he is denying what she is saying, the case will be set for trial.  Id.  The court temporarily passed the case.  Id. at 28-29.  Upon their return, the court announced that it would start from the beginning.  Id. at 29.  After the victim stated that Petitioner raped her, the court conducted a

- 12 -

thorough plea colloquy. Id. at 30-35. Also of import, Petitioner entered into a written Plea of Guilty and Negotiated Sentence. Ex. A at 4-6. In this case, he received the benefit of the bargain, a seven-year prison sentence, avoiding a possible fifteen-year sentence.

During the colloquy, Petitioner confirmed that he could read and understand the English language. Ex. D at 31. He stated he had read the plea form and signed the document. Id. He added that he had enough time to discuss the matter with his counsel. Id. He stated that his counsel had explained the matter fully, including possible defenses as well as the implications of the plea. Id. at 32. Petitioner said he was fully satisfied with his counsel's representation. Id. The court then advised Petitioner:

> You understand that by entering this plea you give up certain rights, and among the rights that you give up are the right to trial, the right to call witnesses, to examine and cross-examine witnesses, as well as the right to remain silent?

Id.

Petitioner responded affirmatively. Id. The court continued by asking Petitioner if he understood that he was giving up the right to appeal "all matters related to this judgment, including the issue of guilt or innocence." Id. Petitioner said yes. Id. Petitioner denied that anyone had promised him anything outside of the plea agreement. Id. at 32-33. Petitioner also said no one threatened or coerced him. Id. at 33. Petitioner confirmed that

- 13 -

he was entering the plea because he was "in fact, guilty[.]" <u>Id</u>.
He denied being under the influence of drugs or alcohol. <u>Id</u>. The
defense stipulated to the factual basis for the plea. <u>Id</u>. The
court found the plea to be entered into freely, willingly, and
voluntarily and also found a factual basis for the plea. <u>Id</u>.

Of import,

> in a post conviction challenge to a guilty
> plea:
>
>> [T]he representations of the
>> defendant, his lawyer, and the
>> prosecutor at [the plea] hearing, as
>> well as any findings made by the
>> judge accepting the plea, constitute
>> a formidable barrier in any
>> subsequent collateral proceedings.
>> Solemn declarations in open court
>> carry a strong presumption of
>> verity. The subsequent presentation
>> of conclusory allegations
>> unsupported by specifics is subject
>> to summary dismissal, as are
>> contentions that in the face of the
>> record are wholly incredible.
>
> <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74, 97
> S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)
> (citations omitted); <u>see also</u> <u>United States v.
> Gonzalez-Mercado</u>, 808 F.2d 796, 799–800 and n.
> 8 (11th Cir. 1987) (while not insurmountable,
> there is a strong presumption that statements
> made during a plea colloquy are true, citing
> <u>Blackledge</u> and other cases).

<u>Bryant v. McNeil</u>, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2
(N.D. Fla. May 17, 2011) (Report and Recommendation) (Not Reported
in F.Supp.2d), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u> <u>by</u> <u>Bryant v.
McNeil</u>, No. 4:09CV22-SPM/WCS, 2011 WL 2434087 (N.D. Fla. June 16,
2011).

A federal habeas court reviews a state court guilty plea only for compliance with constitutional protections.

> This court has concluded that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed. 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied, 510 U.S. 967 (1993).   Thus, in order for a guilty plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily.   Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994).

The trial court denied Petitioner's first motion for post conviction relief (the letter dated February 12, 2012) and held:

> (i) Defendant alleges his waiver of speedy trial was not voluntary. This is refuted by the Waiver of Speedy Trial form (a copy of which is attached hereto) and by the hearing (a copy of the transcript from the August 18, 2011, hearing is attached hereto) showing that defendant made the waiver, freely, willingly and voluntarily.
>
> (ii) Defendant alleges he is not guilty. As the plea dialogue establishes (a copy of the transcript from the October 27, 2011, hearing is attached hereto - see page 10, lines 7-9) defendant's guilt.
>
> (iii) Defendant alleges the crime with which he is charged was committed by [J.H.]. Attached hereto is a copy of the investigative

- 15 -

> report by the State Attorney's Office refuting
> this allegation.

Ex. D at 15.

Upon a thorough review of the record, Petitioner represented to the court that he desired to accept the plea offer, that his counsel advised him of the possible defenses as well as the implications of the plea, that he understood he was giving up the right to call witnesses, that he not been threatened or coerced, and that he was giving up his right to appeal the judgment in the case.   Nothing in the record persuades this Court that the trial court forced Petitioner to accept a plea.   On the contrary, the record shows that the trial court was inclined not to let Petitioner proceed with the plea, but Petitioner and his counsel persuaded the court that Petitioner was not denying the allegations and wanted to proceed with the plea proceeding.

As noted by Respondents, Petitioner's nephew, a juvenile at the time of the incident, "could not legally consent to having sex with another juvenile." Response at 8.   The prosecutor perceived the admission in his letter as carrying little weight, not only recognizing the very distinct possibility that there had been collusion among family members to obtain the letter after Petitioner's conviction, but also because J.H.'s admissions did not exculpate Petitioner and would be unpersuasive and unfruitful, even if deemed admissible.

The First District Court of Appeal affirmed the decision of the trial court.  Ex. G.  Petitioner is not entitled to relief on ground one of the Petition.  Deference, under AEDPA, should be given to the state court's decision.  The trial court denied the post conviction motion, and the appellate court affirmed.  The state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.  Ground one is due to be denied.

## B.  Ground Two

In his second ground, Petitioner references mental health problems.  Petition at 6.  Although Petitioner references proof, the documents he submitted to the Court support only his allegations of growth deficiency of the brain and a mental problem, not a diagnosis.  Additionally, he submitted documents which show that he made a claim of borderline intellectual functioning and an organic mental disorder, but again, there is no documentation supporting an actual diagnosis of the same.  See Order (Doc. 23); Initial Brief (Doc. 4), Exhibit B.

More importantly, Petitioner did not raise the issue of mental health problems in his Rule 3.850 motion or at the plea proceeding.  Much later, in his notice of appeal of the Rule 3.850 motion, Petitioner states that he has a mind of a twelve year old and needs to see a mental health doctor.  Ex. D at 39.  He further notes that he tried to kill himself.  Id.  Additionally, in his motion for

rehearing, Petitioner states he has a mind of a twelve year old and that his attorney never brought up his mental health issues. Ex. H at 3. Of note, in the notice of appeal of the trial court's denial of post conviction relief rendered on July 10, 2013, Petitioner states that he is appealing the denial because his mental handicap was never brought up at pre-trial proceedings by his attorney. Ex. Q at 65-66. Upon review, Petitioner did not raise the mental health issue in his post conviction motions.

As noted by Respondents, these allegations were belatedly made, or made in a procedurally improper manner. Response at 10. Petitioner did not present the allegations in his Rule 3.850 motions, and the trial court did not have the opportunity to address the claim of mental health problems. The Court concludes that the issue was not fairly presented to the trial court. Since Petitioner did not provide the state courts one full opportunity to resolve the claim, Petitioner must show cause for and actual prejudice from the default. In this instance, Petitioner has not shown cause and prejudice, nor has he shown a fundamental miscarriage of justice will result from applying the default. Response at 10.

At most, Petitioner's allegations suggest that he suffered from some mental deficiency, but he never contended that he was incompetent to enter a plea. The record of the plea proceedings does not show that Petitioner had any difficulty understanding the proceedings, responding to the court's questions, or communicating

- 18 -

with the court or his counsel.  Petitioner responded appropriately to the court's questions and conferred with counsel.  Petitioner stated that he could read and understand the English language.  He confirmed that he read each page of the plea agreement and signed the document after discussing the matter with his lawyer.

Although not a model of clarity, to the extent Petitioner is claiming he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, he must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. See id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a

voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

To the extent Petitioner is claiming he received the ineffective assistance of counsel because his lawyer did not inform the court of his mental deficiencies, Petitioner has not met the prejudice prong of <u>Strickland</u>.  To do so, he would have to show "that there was a reasonable probability that he would have received a competency hearing *and* been found incompetent had counsel requested the hearing." <u>Lawrence v. Sec'y, Fla. Dep't of Corr.</u>, 700 F.3d 464, 479 (11th Cir. 2012), <u>cert</u>. <u>denied</u>, 133 S.Ct. 1807 (2013).  Petitioner has offered no evidence supporting a claim of incompetence.  <u>See</u> Response at 10-12.  The record of what actually transpired at the plea proceeding and sentencing phase demonstrates that Petitioner's guilty plea was knowing and voluntary and he certainly had the mental capacity to reflect on his guilty plea, as the court gave Petitioner the opportunity to reject the plea and proceed to trial, and Petitioner elected, after reflection, to proceed with the plea proceedings and accept the plea bargain.

### C.  Ground Three

In the third ground of the Petition, Petitioner claims that the trial judge was biased against him.  Petition at 8.  Petitioner mentions a newspaper clipping that he failed to provide to this Court for review.  <u>Id</u>.  He claims the newspaper article recorded that the judge said if it comes down to he/said she/said, he would

always go with she/said.  Based on this alleged statement,
Petitioner asserts that he would not have received a fair trial.
Of course, the glaring deficiency in this argument is that
Petitioner could have proceeded to a jury trial, and the jury would
have been the fact-finders, not the judge.  The record show that
the trial court was perfectly willing to set the case for trial.
When Petitioner shook his head no during the victim's statement at
the beginning of the plea proceeding, the court immediately stopped
the proceeding and said: "I can interpret that in only one way,
which is he is denying what she's saying.  He started doing that
when she said she was raped, so we'll set it for trial and we'll
find out which side is right."  Ex. D at 28.  Again, the fact-
finding would have been left to the jury, not the court.

As noted by Respondents, Petitioner did not mention the
allegation of bias until he submitted letters to the Florida
Supreme Court.  Ex. N at 4-6; Ex. O at 2.  These letters were
transferred to the circuit court to be considered as Rule 3.850
motions.  Ex. O.  The trial court rejected Petitioner's claims
because they "could have been raised in his first motion and as
such are legally barred."  Ex. Ex. Q at 13.

Petitioner has procedurally defaulted this ground.  He has
failed to show cause and prejudice or that a fundamental
miscarriage of justice will result if the Court does not reach the
merits of this claim.  Petitioner is not entitled to habeas relief
on ground three of the Petition.

In the alternative, Petitioner has failed to show that the newspaper article had any bearing on his plea or that it had actually been published prior to his plea. Petitioner had the opportunity to change his mind during the plea proceeding, and Petitioner decided to accept the plea bargain. This ground is wholly unsupported, and Petitioner is not entitled to habeas relief on ground three.

### D.   Ground Four

The United States Supreme Court, in <u>Miller v. Ala.</u>, 132 S.Ct. 2455, 2463 (2012) (quoting <u>Roper v. Simmons</u>, 543 U.S. 551, 560 (2005)), recognized that "[t]he Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'"   In his Petition, Petitioner claims his bail was excessive, in violation of the Eighth Amendment.   Petition at 9.   In particular, the Eighth Amendment provides:

> "that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" <u>Baze v. Rees</u>, 553 U.S. 35, 128 S.Ct. 1520, 1529, 170 L.Ed.2d 420 (2008). Although the Excessive Bail Clause does not guarantee a right to bail, it does guarantee that any bail imposed "not be 'excessive' in light of the perceived evil." <u>United States v. Salerno</u>, 481 U.S. 739, 754, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987).

<u>Campbell v. Johnson</u>, 586 F.3d 835, 842 (11th Cir. 2009) (per curiam).

Respondents assume the claim is exhausted, nevertheless they contend that the merits of the claim need not be reached.  Response at 14.  Of initial importance, Petitioner waived this claim when he accepted the plea.  He may not, at this point, "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  Tollett v. Henderson, 411 U.S. 258, 267 (1973).  See Lambert v. United States, 600 F.2d 476, 477-78 (5th Cir. 1979) (finding the contention of denial of due process by excessive bail was waived by the guilty plea).

Respondents also contend that any request for bail was rendered moot once Petitioner entered his plea and was convicted.  Response at 15.  Petitioner's claim is moot:

> Courts have held that a claim concerning pretrial bail becomes moot upon a defendant's plea or conviction. See Murphy v. Hunt, 455 U.S. at 481-82, 102 S.Ct. 1181, 1183 (holding that claim to pretrial bail was rendered moot by conviction); see, e.g., United States v. Vachon, 869 F.2d 653, 656 (1st Cir. 1989) (same); United States v. O'Shaughnessy, 772 F.2d 112, 113 (5th Cir. 1985) (per curiam) (observing that after the defendant's conviction, "[n]either pretrial detention nor release on pretrial bail may now be ordered"); United States v. Buckbee, 3 Fed. Appx. 563 (7th Cir. 2001) (unpublished opinion) ("Any claim to pretrial release became moot once [the defendant] pleaded guilty."); United States v. Taylor, 814 F.2d 172, 174 (5th Cir. 1987) (holding that the following claims were rendered moot by guilty plea: claims that the prosecution breached a pretrial agreement or acted vindictively, that the defendant was not promptly taken before a United States Magistrate, that the court did not rule on

- 23 -

pretrial motions, and that the defendant's pretrial detention was illegal); <u>Johnson v. Glover</u>, 2006 WL 1008986 (M.D. Fla. 2006) (dismissing § 2254 petition as moot where petitioner sought a reduction in the pretrial bail amount set on a second degree assault charge, concluding: "It is clear that Johnson's claim regarding pretrial bail became moot upon either his conviction of the underlying offense and/or his transfer to state custody for service of sentences imposed for various felony convictions) <u>see also</u>, <u>e.g.</u>, <u>Hernandez v. Brooks</u>, 176 F.3d 488 (10th Cir. 1999) (Table, text in WestLaw) (concluding that a habeas petitioner's claim for release pending his parole revocation hearing became moot once the revocation hearing was held).

<u>Bilal v. Hadi</u>, No. 3:06cv224/LAC/MD, 2006 WL 3201324, at *2 (N.D. Fla. Nov. 2, 2006).

Based on the above, Petitioner is not entitled to habeas relief on ground four.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[3]  Because this Court

---

[3] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this 30th day of September, 2015.

_____
BRIAN J. DAVIS
United States District Judge


sa 9/23
c:
James Lee McGee
Counsel of Record
USCA

---

jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.